## A05A1766. GONZALEZ v. THE STATE.
(626 SE2d 569)

MIKELL, Judge.

A DeKalb County jury found Ophelio Gonzalez[1] guilty of three counts of armed robbery, three counts of kidnapping, two counts of hijacking a motor vehicle, and one count of aggravated assault. On appeal, Gonzalez asserts numerous claims of error, including that the trial court erred in denying his motion for a directed verdict, in

---

[1] The notice of appeal was filed in the name of "Ophelio Gonzalez," although the Bill of Indictment sometimes referred to the defendant as "Ophelio Gonzales."

admitting into evidence his custodial statement to police, in allowing the prosecutor to make improper opening and closing arguments, in allowing improper similar transaction and bad character evidence, and in failing to give his requested jury charges. Finding no error, we affirm for the reasons that follow.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence." (Punctuation and footnote omitted.) Brown v. State, 275 Ga. App. 281 (620 SE2d 394) (2005). So viewed, the evidence shows that on the morning of August 20, 2003, the first victim was in his Nissan automobile in the parking lot of his friend's apartment. A "for sale" sign was displayed on the car, and two men approached the victim and indicated that they were interested in buying the car but that they wanted a test drive. The two men got into the car with the victim, and one of the men drove to a nearby parking lot, where the driver pulled out a "black weapon" and told the victim that this was a robbery. The men took the victim's wallet, cell phone, and a chain, and then they beat the victim before leaving him and driving off in his car. The victim was able to identify the driver as Gustavo Lopez.

That same morning a police officer stopped the Nissan because the driver, Lopez, was speeding. Lopez did not have a driver's license or identification, and the officer, who did not know that the Nissan had recently been stolen, impounded the car and arrested Lopez, and a second officer took the car's passenger to the next exit and dropped him off. The officer later identified Gonzalez as that passenger. Some days later, after he was contacted by investigators, the officer searched the Nissan and found a handgun hidden between the cushion and springs of the driver's seat.

On the morning of September 2, 2003, the second victim was warming up his van when two men approached and asked the victim if he had any work for them. One of the men then put a gun to the victim's head and forced the victim into the back of the van, while the other man got into the van, pulled out a knife, and demanded the victim's keys. The man with the knife drove the van while the other man held a gun at the victim's head. The men took approximately $300 from the victim's wallet before forcing the victim out of the van at a Salvation Army location and then driving away.

On the morning of September 3, 2003, an officer responded to a report of an armed robbery of a third victim. The victim, who was bleeding from the forehead, told the officer that he had been robbed at the Northeast Plaza shopping center of $100 by four individuals who had been in a Ford van, one of whom had hit him with a knife. According to the victim, he was held so he could not move and then dragged behind the dumpsters. Approximately two hours later, the

officer responded to a report that a van fitting the description given by the third victim had been spotted about a fifth of a mile from the reported robbery. The officer located the vehicle, and found Lopez, Gonzalez, and two other persons with the van, and placed them under arrest. The van was the vehicle that had been reported stolen by the second victim.

On September 4, 2003, Lopez gave a videotaped interview to officers in which he pointed to a picture of Gonzalez and identified Gonzalez as "Alex." According to Lopez, he and Alex stole a Nissan automobile and robbed the car's owner on August 20, 2003. Lopez also stated that he and Alex stole a van and dropped the owner off at the Salvation Army. Lopez further claimed that he was with Alex when Alex robbed a man at the Northeast Plaza shopping center.

During trial, the State presented DNA evidence showing that blood from the third victim was found on one of Gonzalez's shoes. The State also presented similar transaction evidence through the testimony of another robbery victim. The victim testified that on August 17, 2003, a man whom the victim subsequently identified as Gonzalez took the victim's money at gunpoint. According to the victim, Gonzalez forced him into a truck and, along with an accomplice, drove to the victim's apartment, where they stole electronic equipment.

1. Gonzalez claims that the trial court erred in denying his motion for a directed verdict of acquittal at the close of the State's evidence. In reviewing a denial of a motion for a directed verdict the issue is whether, under the rule of *Jackson v. Virginia*,[2] the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. See *Lewis v. State*, 268 Ga. App. 547, 547-548 (1) (602 SE2d 278) (2004).

Gonzalez contends that because the three victims failed to identify him as a perpetrator that the only evidence against him was his presence at the time of arrest near the scene of the third incident. See *Glenn v. State*, 278 Ga. 291, 294 (1) (b) (602 SE2d 577) (2004) (mere presence at the scene of the crime is insufficient grounds for a conviction). However, Lopez's custodial statement to police identified Gonzalez as his accomplice in the crimes against the three victims. Although the statement impeached Lopez's trial testimony that Gonzalez did not participate in the robberies, the prior inconsistent statement was also admissible as evidence to prove the matters asserted therein. "[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

purposes." (Citations and punctuation omitted.) *White v. State*, 278 Ga. 499, 500 (1) (604 SE2d 159) (2004).

A felony conviction based upon the testimony of an accomplice must be corroborated by independent evidence, but the sufficiency of the corroborating evidence, which may be circumstantial, is for the jury to decide. See *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996). Gonzalez was linked to the first incident through the officer's testimony identifying Gonzalez as the passenger in the stolen Nissan. Gonzalez was linked to the second incident when police found him with the van that had been stolen from the second victim the previous day. Gonzalez was linked to the third incident through the DNA evidence matching the blood found on Gonzalez's shoes to the blood of the third victim. "Slight evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict." (Punctuation and footnote omitted.) *Brown v. State*, 268 Ga. App. 24, 26 (1) (601 SE2d 405) (2004). Accordingly, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Gonzalez was guilty of the charged offenses, and that the trial court did not err in denying his motion for a directed verdict of acquittal.

2. Gonzalez contends that the trial court erred in allowing his custodial statement into evidence. We disagree. "In determining the admissibility of a statement, a trial court must find by a preponderance of evidence that the statement was made knowingly and voluntarily. Unless clearly erroneous, factual and credibility determinations made at a *Jackson-Denno* hearing must be accepted by appellate courts." (Citations omitted.) *Wallace v. State*, 267 Ga. App. 801, 807 (6) (600 SE2d 808) (2004).

Evidence adduced at the hearing showed that Gonzalez, whose native language was Spanish, was interviewed by an English-speaking detective. The interviewing detective was accompanied by a second officer, who served as a Spanish language translator. After hearing his *Miranda* rights, Gonzalez asked for an attorney, and the officers left to question another suspect. Upon their return the interviewing officer picked up Gonzalez's shoes, which had been removed and placed outside the room, and, referring to the shoes, asked the other officer, in English, "does that look like blood to you?" Gonzalez then stated, in Spanish, "that was where [Lopez] hit the man in the head." Gonzalez accompanied the statement with a chopping motion. The trial court concluded that the statement was not the result of questioning, but spontaneous and therefore admissible. See *Pierce v. State*, 255 Ga. App. 194, 196 (2) (564 SE2d 790) (2002) ("[v]oluntary, spontaneous outbursts that are not made in

response to any form of custodial questioning or interrogation are admissible at trial") (citation omitted).

"After a suspect in custody has invoked his right to counsel, subsequent interrogation is strictly prohibited unless initiated by the suspect." (Citation and punctuation omitted.) *Cottingham v. State*, 206 Ga. App. 197, 200 (4) (424 SE2d 794) (1992). As Gonzalez had asked for counsel and had not initiated another interview, the issue is whether the officer's actions in reference to Gonzalez's shoes amounted to interrogation.

> A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an in-. criminating response.

(Citation and punctuation omitted; emphasis in original.) Id. at 200-201 (4). According to the officers' testimony, they were speaking to each other in reference to the material on Gonzalez's shoes. There is no evidence that the officers were intentionally engaging in a practice designed to elicit a response from Gonzalez. Compare id. at 201 (4) (officer admitted his intent in discussing the case in front of the defendant was to elicit an incriminating response). Furthermore, the officer's conversation was in English in front of a Spanish-speaking suspect who had been interrogated in Spanish, and under the circumstances we cannot say the officers should have known their actions were likely to elicit an incriminating response from Gonzalez. See generally *Walton v. State*, 267 Ga. 713, 718 (4) (482 SE2d 330) (1997) (appellant's statement was not in response to an express question or by actions the detective should have known were likely to elicit an incriminating response). Based on the foregoing, we conclude that the trial court did not err in finding that Gonzalez's statement was spontaneous and not the result of interrogation.

3. Gonzalez claims that the trial court erred by permitting the prosecutor, over objection, to make improper arguments in its opening statement. We disagree.

In its opening statement, the prosecution may state what it intends to prove. *Highfield v. State*, 246 Ga. 478, 482 (3) (272 SE2d 62) (1980). "The proper range of comment by counsel is a matter within the discretion of the trial court." (Citation omitted.) *Mathis v. State*, 171 Ga. App. 620, 621 (2) (320 SE2d 861) (1984). "In Georgia, good faith is the general test in passing upon the preliminary statement of

the prosecutor to the jury as to what he expects to prove in a criminal case." (Citation and punctuation omitted.) *Parker v. State*, 277 Ga. 439, 440 (2) (588 SE2d 683) (2003).

Gonzalez objected to the prosecutor's statement that a police officer had tentatively identified Gonzalez from a lineup and that "[i]t is a pretty good tentative I.D.," on the grounds that the statement was argumentative. In response, the prosecutor represented that "[i]t's going to be what the officer testifies to," and the trial court then overruled Gonzalez's objection. The police officer who stopped the stolen Nissan subsequently testified that he had tentatively identified Gonzalez from a photographic lineup. The prosecutor then asked the officer, to "explain to the jury when you say tentative or partial on that [identification] form what you are indicating." After explaining why he had identified Gonzalez in the photographic lineup, the officer further testified that he did not have any doubt that Gonzalez was the passenger. As it appears the prosecutor passed the good faith test with regard to what he expected to prove through the officer's subsequent testimony, we cannot say the trial court abused its discretion in allowing the prosecution's statement.

Defense counsel also objected to the prosecutor's statement in opening argument, in reference to the similar transaction evidence, that "you can consider that as it relates to his involvement," on the grounds that the statement was argumentative and not the law. The trial court then instructed the jury that "the law will be charged to you and instructed to you by the court." Defense counsel responded "[t]hank you, judge," and did not renew the objection. As Gonzalez acquiesced following the trial court's instruction to the jury, he cannot now complain that the trial court erred in the way it chose to address his objection. See *Boatright v. State*, 192 Ga. App. 112, 116 (5) (385 SE2d 298) (1989). "Any other complaint regarding opening argument was waived by failure to object." (Citation omitted.) *Hamilton v. State*, 274 Ga. 582, 584 (4) (555 SE2d 701) (2001).

4. A friend of the first victim testified that she called the victim's cell phone shortly after the robbery and spoke with someone who was laughing and "saying a lot of bad words." They also told the friend that "God had already punished the guy who had taken the car because the police had already taken him." The trial court allowed the testimony as part of the res gestae. Gonzalez now contends the trial court erred in allowing the testimony for the reasons set forth by defense counsel in his objection.

Defense counsel objected to the friend's testimony on the grounds that it amounted to hearsay which violated his constitutional right to confront the witnesses against him, citing *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), and further asserted that the State had failed to lay a foundation for the testimony.

However, a foundation was laid by the friend's previous testimony and by the evidence showing that the victim's cell phone was stolen along with his car. With regard to the confrontation issue, *Crawford* bars the admission of "out-of-court statements in evidence when they are *testimonial* in nature, and when the defendant does not have an opportunity to cross-examine the declarant." (Footnote omitted; emphasis supplied.) *Gay v. State*, 279 Ga. 180, 181-182 (2) (611 SE2d 31) (2005). The statements at issue here were not testimonial because the declarant made the statement to a friend of the victim and not to the police or in a setting where the declarant could reasonably expect the statement to be used at a later trial. See *Demons v. State*, 277 Ga. 724, 727 (4) (595 SE2d 76) (2004) (hearsay statements were not testimonial because, in part, they were made without any reasonable expectation that they would be used at a later trial). Accordingly, we find no error.

5. Gonzalez contends that the trial court erred in admitting photographs of Gonzalez, Lopez, and a co-defendant in the interrogation room following their arrest because the photographs were impermissibly prejudicial. However, "all of the circumstances connected with an arrest are admissible into evidence. Accordingly, the trial court properly admitted the photograph depicting [Gonzalez's] appearance at the time of his arrest." (Citations omitted.) *Garcia v. State*, 267 Ga. 257, 258-259 (6) (477 SE2d 112) (1996).

6. Gonzalez further contends that the trial court erred by admitting evidence that at the time of his arrest he spat out a substance which tested positive for cocaine when the drug-related count of the indictment had been previously severed by his guilty plea to the related offense. In particular, he contends that the evidence amounted to an improper comment on his character. See generally *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000) (evidence of circumstances connected with an accused's arrest is not automatically prejudicial or automatically relevant). However, evidence of Gonzalez's drug possession within hours of the third robbery was relevant to the issue of motive. "[T]he State is entitled to present evidence to establish that there was a motive, and evidence that the defendant used drugs is relevant to prove that he had a motive for committing the crime and is not rendered inadmissible by the fact that it incidentally puts his character in issue." (Citations and punctuation omitted.) *Shelton v. State*, 251 Ga. App. 34, 37-38 (2) (553 SE2d 358) (2001). Furthermore, according to Lopez's statement to police, the reason for the robberies was to get money to buy cocaine, marijuana, and beer. We find no error.

7. Gonzalez claims that the trial court erred in permitting testimony that the Georgia Bureau of Investigation (GBI) Crime Lab "was in compliance with an earlier audit" over his counsel's objection

that the evidence was improper hearsay, lacked foundation, deprived him of his constitutional right of confrontation, and was not the best evidence available. We disagree.

Defense counsel objected when the prosecutor asked a GBI biologist if he was "aware of whether the GBI crime lab was found to be in compliance" with a previous audit. The witness did not answer the question, and the trial court ruled that the State could show if the witness had personal knowledge of the results of the audit. The prosecutor then asked the witness if he was personally aware of the result of the audit and if the crime lab was in good standing. The witness responded yes to the first question and that the crime lab was in good standing to the second question. Defense counsel did not object.

We find no error as framed by Gonzalez. Gonzalez complains that the trial court erred by permitting the witness to testify that the GBI lab was in compliance with an earlier audit, but the witness never so testified. The witness did not answer the question regarding audit compliance, and defense counsel did not renew his objection when the prosecutor asked two different questions. See generally *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999) (defendant must object to the alleged impropriety at the time it occurs).

8. Gonzalez claims that the trial court erred by admitting portions of Lopez's statement to police into evidence, over objection, as these statements were improper evidence of bad character. Again, we disagree.

Gonzalez objected to the introduction of that portion of Lopez's statement suggesting that Lopez and Gonzalez had gone to Buford Highway to rob Hispanics as improper evidence of bad character. However, as the alleged crimes appeared to have been committed against Hispanic victims, that portion of Lopez's statement was relevant and admissible even though it may have incidentally reflected on Gonzalez's character. See *Wood v. State*, 279 Ga. 667, 670 (2) (620 SE2d 348) (2005) ("[e]vidence that is relevant and material to an issue in a case is not made inadmissible because it incidentally places the defendant's character in issue") (citation and punctuation omitted).

9. Gonzalez further claims that the trial court erred in admitting similar transaction evidence showing that Gonzalez had robbed a man at gunpoint on August 17, 2003. Gonzalez challenged the evidence at a pre-trial hearing, but the trial court ruled that the evidence was admissible, and defense counsel failed to object when the testimony was offered at trial. "[E]ven though a defendant challenges similarity at the pretrial hearing, he waives this ground by failing to assert it when the evidence is introduced at trial." (Citation omitted.) *White v. State*, 265 Ga. App. 155, 158 (2) (592 SE2d

920) (2004). Accord *Smith v. State*, 268 Ga. 42, 43 (3) (485 SE2d 189) (1997). Therefore, Gonzalez has waived the issue for purposes of appeal.

10. Gonzalez claims the trial court erred by refusing to give two of his requested jury charges. "In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citation and punctuation omitted.) *Brown v. Mann*, 237 Ga. App. 247, 250 (2) (b) (514 SE2d 922) (1999).

The first requested charge asked the jury to consider if the defendant understood and knowingly waived his *Miranda* rights, and further instructed that if the police initiated or continued a conversation with the defendant after the defendant exercised such rights, then any statement made to police by the defendant would not be voluntary. The requested charge was not adjusted to the evidence as the trial court had previously determined Gonzalez's in-custody statement was not made in response to interrogation, and the trial court further stated during the charge conference that the evidence would not support a finding that the statement was elicited through questioning. See *Norred v. State*, 253 Ga. App. 379 (1) (559 SE2d 125) (2002) (defendant's in-custody statements to police were not the result of interrogation, and the trial court did not err in refusing to give defendant's proposed *Miranda* charge to the jury). The jury was entitled to consider whether Gonzalez's statement to police was voluntarily given. See *Spence v. State*, 252 Ga. 338, 343 (3) (313 SE2d 475) (1984) (ultimate question of the voluntary character of the statement and its truthfulness is for the jury). However, the trial court charged the jury that they should consider the defendant's out-of-court statement only if they concluded the statement was freely and voluntarily made. Inasmuch as the requested charge was not adjusted to the evidence and the relevant issue was otherwise covered by the general charge, we conclude that the trial court did not err by failing to give the requested charge.

Gonzalez further contends that the trial court erred in failing to give the proposed *Miranda* charge because the charge was applicable to Lopez's statement. However, the proposed charge was written to apply to the "defendant." Furthermore, "[a] party will not be heard to complain of the violation of another person's constitutional rights." (Citation and punctuation omitted.) *Bell v. Austin*, 278 Ga. 844, 846 (2) (a) (607 SE2d 569) (2005). Accordingly, we find no merit in this argument.

Gonzalez also argues that the trial court erred by failing to give his requested charge concerning DNA evidence. The requested charge informed the jury, in part, that "[t]he random match probability statistic is not the equivalent of a statistic that tells the jury the

likelihood of whether the defendant committed the crime." The trial court declined to give the charge because it was constructed as if the court was arguing the issue to the jury, and because the pattern instructions were sufficient. "It is not error to refuse to charge where the request is argumentative, summing up facts favorable to the defendant's theory of innocence." (Citation omitted.) *Johnson v. State*, 235 Ga. 486, 490 (1) (220 SE2d 448) (1975). Furthermore, the instructions given to the jury included a charge on the evaluation of DNA evidence. As the requested charge was argumentative and the instructions given to the jury addressed the issue of DNA evidence, we find no error by the trial court in refusing to give Gonzalez's proposed charge.

11. Lastly, Gonzalez claims the trial court erred by failing to give a limiting or curative instruction, as requested, after the prosecutor improperly shifted the burden of proof to Gonzalez during closing argument. Gonzalez objected to the prosecutor's statement that "I, on behalf of the State, always have the burden. It never shifts, but don't confuse the burden with the power. The defense has the power that they can bring in anybody they want to bring in to testify." Defense counsel contended that this argument improperly shifted the burden of proof to the defendant, and asked the trial court for a limiting instruction to the jury that the defense did not have to submit any evidence. The trial court responded that he would later charge the jury as to the defendant's right to remain silent. Defense counsel gave no response to the trial court's ruling, and the prosecutor continued with the closing argument. The trial court subsequently instructed the jury in its general charge that "[t]he defendant in a criminal case is under no duty to present any evidence tending to prove innocence and is not required to take the stand and testify in the case."

Considering the foregoing, it is apparent that the trial court gave the instruction requested by defense counsel. Although the instruction was not contemporaneous, defense counsel remained silent after the trial court indicated that it would instruct the jury later in the general charge.

> Appellant made only a general request for limiting instructions, which the trial court obviously did not construe as a specific request for *contemporaneous* limiting instructions. When the trial court indicated that it would, in fact, give such instructions in its subsequent general charge, appellant did nothing to indicate that the timing, as well as the giving, of such instructions was a material consideration. Accordingly, for all intents and purposes, the trial court complied with the only request that was ever made by appellant.

(Emphasis in original.) *Hyde v. State*, 205 Ga. App. 754, 758 (3) (424 SE2d 39) (1992). Under these circumstances, we find no error. See id.
*Judgment affirmed. Ruffin, C. J., and Andrews, P. J., concur.*

Decided January 25, 2006 — 

*James W. Gibert*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.