S07A0925. BRYANT v. THE STATE.
(651 SE2d 718)

HINES, Justice.

Following the denial of his motion for new trial, as amended, Michael Wayne Bryant appeals his convictions for malice murder, burglary, and arson in the first degree in connection with the death of Edith Ann Haynes and the burglary and arson of her mobile home. Bryant challenges the sufficiency of the evidence; certain rulings regarding the admission of evidence; the allowance of an in-court

demonstration; and the effectiveness of trial counsel. For the reasons which follow, the challenges are without merit, and we affirm.[1]

Viewing the evidence in the light most favorable to the verdicts, it showed that Bryant entered into an agreement to purchase the house of Edith Ann Haynes, his co-worker. Bryant was to pay off Haynes's two mortgages on the house, make minor repairs to her purchased mobile home, move her into the mobile home, and pay her $25,000 in return for the house. Bryant had begun making repairs to the mobile home by the spring of 2000. He eventually asked Haynes for a deed to the house, stating that he would return it along with the balance of his payment. A warranty deed was executed on June 3, 2000, and filed of record on October 20, 2000, but Bryant did not make the promised payment.

After Bryant did not return her messages for more than a month, Haynes gave him an ultimatum that she would sell to another interested buyer unless he paid. Bryant responded by giving Haynes a check. They eventually agreed to go to the bank on November 15, 2000 to cash the check and finalize the transaction. Bryant had repeatedly requested that Haynes delay cashing the check because of his financial difficulties. Checks he had written in previous months had been dishonored. His application for a hardship withdrawal from his 401(k) account had been denied. After receiving the check, Haynes sustained a head injury from falling boards. Haynes believed that Bryant intentionally caused the boards to fall on her. It was not until November 2001, a year after Haynes's death, that Bryant paid the $25,000 to her estate.

At 11:00 a.m. on November 15, 2000, Bryant was seen arriving at Haynes's mobile home. He was also seen there around 12:30 p.m. His white truck was still parked there at 2:45 p.m. At one point, when he earlier left the scene, Bryant appeared agitated. He slammed the door to the mobile home, "stomped" to his truck, slammed the door of the truck, and spun his tires. Although two witnesses placed Bryant at Haynes's mobile home, he had told his then-wife that he was going elsewhere.

At 8:15 p.m., police dispatched an officer to the mobile home park to investigate a 911 hang up call. The officer observed Haynes's mobile home on fire. After the fire was extinguished, Haynes's body

---

[1] The crimes occurred on November 15, 2000. On December 11, 2001, a Richmond County grand jury indicted Bryant for malice murder, burglary, and arson in the first degree. Bryant was tried before a jury October 21-28, 2002, and found guilty of all charges. On November 27, 2002, he was sentenced to life in prison for malice murder, 20 years in prison for burglary, and 20 years in prison, consecutive to the life sentence, for arson in the first degree. A motion for new trial was filed on December 6, 2002, amended on December 15, 2005, and denied on February 23, 2006. A notice of appeal was filed on March 17, 2006, and the case was docketed in this Court on March 9, 2007. The appeal was argued orally on July 17, 2007.

was found inside the mobile home. She was lying face down in the bathroom. The front of her clothing and the floor underneath her were not burned. Her body had sustained first and second degree burns, but there also were contusions not explained by the burns. She had swelling and bruising of her lips, right eye, and chest. A cheek was discolored. There were three abrasions on her neck, and petechia in her eyes and trachea. A neck bone was broken. She had hemorrhaging around her thyroid. The insignificant amount of carbon monoxide in her blood indicated that she had died before the fire started. The medical examiner determined the cause of her death to be manual strangulation.

A fire analysis expert investigating the mobile home fire concluded that the fire had spread due to flammable liquid poured in the bathroom, hall, and living room. The expert noted the heavy burn pattern in these areas. The aluminum base of the front door had melted, which was unusual due to the high melting point of aluminum and the tendency of heat to rise. Lab tests revealed that gasoline was under the threshold of the front door.

A search of Bryant's home yielded evidence of fire-related activity. The house had been soaked with water, although there was no obvious source. The police found fuse wire, lighter fluid, wax, candles, matches, and the partially-burned driver's license of an ex-wife. Bryant had certificates for the completion of firefighting courses in connection with his role in the fire brigade at his place of work. These courses taught fire ignition and arson awareness, including training in delayed-ignition devices constructed from household items. The search also yielded three letters between Bryant and an attorney who dealt with criminal matters. One letter, dated February 11, 2001, three months after the incident and ten months before Bryant's arrest, was titled, "State versus Michael Wayne Bryant, Jr." Two other letters dealt with money owed by Bryant to Haynes's estate.

Bryant's former home was destroyed by fire in 1995. In August 1994, Bryant's then-wife, Melissa Carter, found him playing with fuse wire. On January 3, 1995, Bryant insisted that she take their dog and spend the night with her parents. The home burned that night. Carter later learned that Bryant had begun renting an apartment in December 1994, a month before the fire. She also discovered that he had retained some of his belongings which would have been destroyed in the fire. The couple used the insurance proceeds to pay debts.

1. Bryant contends that there was insufficient evidence to support his convictions for malice murder and arson because the prosecution presented a purely circumstantial case and he had an uncontradicted alibi that he was with his wife at the time of the murder and fire. However, it is the jury that determines the credibility of the witnesses, and it was authorized to disbelieve the alibi testimony.

*Daniels v. State*, 281 Ga. 226, 228-229 (2) (637 SE2d 403) (2006). What is more, questions about the reasonableness of hypotheses are generally for the jury's determination, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the defendant's guilt, this Court does not disturb such finding unless the verdict of guilty is insupportable as a matter of law. Id. And that is not the situation in this case. The State presented evidence of Bryant's motive and opportunity for the killing as well as for the fire; also, any alleged alibi regarding the time frame of the fire is readily explained by the possibility of the use of a delayed-ignition device.

The evidence was sufficient to authorize a rational trier of fact to find Bryant guilty beyond a reasonable doubt of the malice murder of Haynes and arson in the first degree. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bryant likewise contends that there was insufficient evidence to support his conviction for burglary because there was not sufficient evidence of a lack of authority to enter Haynes's dwelling, and in fact, he had permission to enter the mobile home to conduct repairs. But, the contention is unavailing. Certainly, a conviction for burglary requires, inter alia, the lack of authority to enter the dwelling. OCGA § 16-7-1. However, circumstantial evidence can suffice to prove the lack of authority. *Jones v. State*, 258 Ga. 25, 27 (1) (365 SE2d 263) (1988). Here, Haynes was found partially dressed in the bathroom, apparently having used the lavatory immediately before her death. A reasonable inference is that her murderer intruded on her privacy. Moreover, a witness testified that Haynes had recently refused to give Bryant a new key to her mobile home. Thus, the jury was authorized to find that even if Bryant at some point had permission to enter the mobile home, he no longer did at the time of the murder and arson. The evidence of Bryant's burglary of Haynes's mobile home was sufficient as a matter of law. *Jackson v. Virginia*, supra.

3. Bryant next contends that the trial court committed reversible error in allowing the State to present evidence about his prior house fire as a similar transaction. Similar transaction evidence must satisfy three elements to be admitted: (1) the evidence must be introduced for a proper purpose; (2) the evidence must establish by a preponderance of the evidence that the defendant perpetrated the similar transaction; and (3) the two transactions must be sufficiently similar or connected so that the existence of the former transaction tends to prove the latter transaction. *Freeman v. State*, 268 Ga. 185, 188 (4) (486 SE2d 348) (1997); *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). Bryant argues that the evidence was introduced for an improper purpose because it was used to show motive, when motive was not at issue, that the State failed to show by

a preponderance of the evidence that he burned down his former home, and that the State failed to prove a sufficient nexus between the two fires because there were insufficient similarities. But, the arguments are without merit.

The trial court found that the evidence was admissible to show motive and course of conduct, which in general are proper purposes for such evidence. *Biggs v. State*, 281 Ga. 627, 628-629 (2) (642 SE2d 74) (2007). Nevertheless, Bryant urges that motive is an improper purpose for introduction of the evidence in his case as it was in *Banks v. State*, 216 Ga. App. 326, 328 (454 SE2d 784) (1995). In *Banks*, the trial court permitted evidence of an earlier incident involving kidnapping and robbery as a similar transaction to the aggravated assault with intent to commit robbery on trial in order to "prove motive and intent." Id. at 328 (2). The Court of Appeals expressed concern that,

> if it were permissible to admit the prior robbery in the trial of [Banks's] case, then any earlier robbery would be admissible in any robbery trial since the motive, to acquire victims' property, and the intent, to take the property from the victims with the intent to commit theft, would exist in every case.

Id. However, the linchpin of its holding that the evidence of the prior incident was inadmissible was its determination that there were no significant similarities between the earlier criminal event and the offense on trial so that proof of the former did not prove the latter. Id. That is far from the situation in the present case.

Evidence of the earlier house fire was introduced, not only to show motive, but to demonstrate Bryant's course of conduct. Before each incident, Bryant acted in a suspicious manner with regard to the fire, and both fires occurred at homes to which Bryant had access. Also, Bryant had incurred substantial debt prior to each fire and reaped financial benefit as a result of each fire. The two transactions were sufficiently similar so that responsibility for the previous house fire tended to prove Bryant's responsibility for the arson of Haynes's mobile home. *Head v. State*, 276 Ga. 131, 135 (5) (575 SE2d 883) (2003).

Yet, Bryant further maintains that the State failed to prove that he previously burned his own home. But, it is quite the contrary. The State established by a preponderance of the evidence that Bryant burned his home by outlining his suspicious behavior with regard to that fire. This included evidence of observation of Bryant playing with fuse wire before the fire; Bryant's insistence that his wife spend the evening of the fire with her parents and that she take their dog

with her; his prior rental of an apartment without the knowledge of his wife; and his retention of articles that would have been destroyed in the fire.

The similar transaction evidence was properly admitted.

4. Bryant next takes issue with the trial court permitting the State to introduce into evidence three letters to him from his former attorney, State's Exhibits 27, 28, and 29, on the basis that admission of the evidence violated the attorney-client privilege. See OCGA § 24-9-24.[2] But, the privilege was not violated.

The attorney-client privilege protects communications between the client and the attorney that are intended to be confidential; the protection does not extend to communications which are not of a confidential nature. *Taylor v. Taylor*, 179 Ga. 691, 693 (177 SE 582) (1934); *Southern Guar. Ins. Co. of Ga. v. Ash*, 192 Ga. App. 24, 28 (383 SE2d 579) (1989). It does not extend to client communications to an attorney for the purpose of being conveyed by the attorney to a third party. *Howard v. State*, 279 Ga. 166, 169-170 (3) (611 SE2d 3) (2005). Nor does the privilege cover the mere fact of employment. *Jones v. State*, 263 Ga. 904, 904-905 (2) (440 SE2d 161) (1994); *Smith v. Smith*, 222 Ga. 694, 699 (5) (152 SE2d 560) (1966); *Cranford v. Cranford*, 120 Ga. App. 470, 473 (2) (170 SE2d 844) (1969). Indeed, the statutes outlining the attorney-client privilege are not broadly construed; the attorney-client privilege embodied in OCGA § 24-9-24 has been confined "to its narrowest permissible limits." *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 207-208 (1) (538 SE2d 441) (2000).

> Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation.

Id.

Exhibit 27 is a letter, dated approximately three months after Haynes's death and prior to Bryant's being charged and arrested, from an attorney asking Bryant to contact him to schedule an

---

[2] OCGA § 24-9-24 provides:

Communications to any attorney or to his employee to be transmitted to the attorney pending his employment or in anticipation thereof shall never be heard by the court. The attorney shall not disclose the advice or counsel he may give to his client, nor produce or deliver up title deeds or other papers, except evidences of debt left in his possession by his client. This Code section shall not exclude the attorney as a witness to any facts which may transpire in connection with his employment.

appointment to meet regarding a matter referred to at the top of the document as, "RE: State vs. Michael Wayne Bryant, Jr." The fact that Bryant may have employed the attorney is not privileged. *Jones v. State*, supra at 904-905 (2); *Smith v. Smith*, supra at 699 (5); *Cranford v. Cranford*, supra at 473 (2). But, Bryant additionally argues that the letter constituted improper character evidence because of comments in opening statements,[3] the well-known reputation of the attorney in the community as handling criminal defense, and the style on the document, all indicating that he was "doing something illegal" or anticipating criminal charges. However, even assuming the jury's awareness that the document referenced a potential criminal matter, the State sought admission of the letter to rebut the defense's assertion that Bryant sought counsel merely in regard to a real estate transaction. Evidence that is relevant and material to an issue in a case is not rendered inadmissible on the basis that it incidentally places the defendant's character in issue. *Wood v. State*, 279 Ga. 667, 670 (2) (620 SE2d 348) (2005).

The remaining letters have not been shown to be inadmissible as violative of the privilege. In Exhibit 28, the attorney was merely forwarding to Bryant a copy of a letter addressed to the attorney for Haynes's estate, noting the enclosure of the final payment for the real estate transaction. Exhibit 29 is a follow-up letter to Bryant, enclosing a copy of a letter sent to the estate attorney on behalf of Bryant and asking Bryant if there was a mortgage or indebtedness on the property, and if he had a deed.

5. Bryant contends that the trial court committed reversible error "when it allowed the introduction of inadmissible character evidence concerning alleged satanic rituals during voir dire, opening statements, and trial." But, the contention is unavailing.

As to the portion of Bryant's complaint about the introduction of allegedly inadmissible character evidence at trial, Bryant fails to cite specific instances of the admission of evidence to which he now takes issue. *Butler v. State*, 273 Ga. 380, 383 (6) (541 SE2d 653) (2001). This is understandable inasmuch as Bryant acknowledges that the trial court ruled that the State was prohibited from introducing evidence about satanic rituals. But, Bryant urges that the State circumvented such ruling by its improper comments during voir dire and opening statement. However, it appears that neither voir dire nor opening statements were transcribed. Therefore, it is impossible for this Court to discern exactly what questions were asked of the prospective jurors, or to evaluate remarks made by the State in opening. *Jackson v. State*, 281 Ga. App. 506, 509 (2) (636 SE2d 694) (2006); *Bowman v.*

---

[3] Apparently, the opening statements were not transcribed.

*State*, 144 Ga. App. 681 (1) (242 SE2d 480) (1978). Thus, insofar as the record reflects a sidebar motion for mistrial and objection by defense counsel to the State "making comments about the satanic rituals" on the bases that they were prejudicial and placed Bryant's character in issue, there is no showing that a mistrial was warranted.

6. Bryant next contends that the trial court abused its discretion in allowing into evidence allegedly "[s]econdhand" hearsay through testimony from Haynes's longtime co-worker, Hall, regarding "a conversation that Haynes had with Chambers," who was Haynes's best friend, about Bryant's misconduct in securing the deed to Haynes's house. To begin with, the cited testimony is not secondhand or "double" hearsay. See *Gordon v. State*, 273 Ga. 373, 376 (2) (b) (541 SE2d 376) (2001). Hall did not testify about the substance of a conversation between Haynes and Chambers, but rather she related what happened to Haynes while Haynes was on the telephone with Chambers. She testified that Haynes had just awakened and was having a telephone conversation with Chambers when Bryant "rushed in" and told Haynes that he needed the house deed to take to his father's attorney, that he would bring the deed "right back" to her along with the money he owed her, and that they would then settle their transaction.

Bryant merely makes the bare assertion that under OCGA § 24-3-1 (b), "[n]o such necessity was given and/or proven" for admission of the evidence; he does not challenge its reliability or trustworthiness. Compare *Culmer v. State*, 282 Ga. 330 (647 SE2d 30) (2007). During trial, Haynes's hearsay statements were necessary, as she was deceased and unavailable. *Tuff v. State*, 278 Ga. 91, 93 (2) (597 SE2d 328) (2004). What is more, if there was any error in permitting the testimony, it would be deemed harmless as Chambers took the stand herself and testified without objection to essentially the same facts as Hall, and because it could not have contributed to the verdict in light of the other legally admissible evidence of Bryant's guilt. *Brooks v. State*, 281 Ga. 514, 518 (3) (640 SE2d 280) (2007).

7. Bryant asserts that the trial court abused its discretion by permitting the State to have the fire investigator perform an in-court demonstration of how a candle in conjunction with other common household items can be used as a delayed ignition device; he argues it was an abuse of discretion because on cross-examination the investigator testified that he had no evidence that a "delayed starter" was used in this case; therefore, the demonstration was based on facts and items not in evidence, and was prejudicial to him.

But, Bryant failed to make a contemporaneous objection to the demonstration at trial, so his complaint on appeal is waived. *Perry v. State*, 274 Ga. 236, 238 (3) (552 SE2d 798) (2001); *Powell v. State*, 226 Ga. App. 861, 863 (1) (a) (487 SE2d 424) (1997). In any event, an

in-court demonstration will sometimes make a practical illustration of the question in issue, and it is necessarily largely within the discretion of the trial court to determine whether the testimony in regard to the demonstration shows that it was made under such conditions as to fairly illustrate the point in issue. *Boyce v. State*, 198 Ga. App. 371, 373 (3) (401 SE2d 578) (1991). In this case, the demonstration illustrated a point in issue because of the prosecution theory as to how Bryant could have set the fire in light of his alleged alibi, and even though the investigator testified that he did not have evidence of a delayed starter device, there was other evidence at trial from which the jury could infer that the fire was started by Bryant by delayed ignition. The investigator testified that those trained in basic fire fighting in Georgia, like Bryant, would have been taught about such arson techniques. Furthermore, the investigator's acknowledgment on cross-examination that the use of a delayed device to ignite the fire at the mobile home was speculative militates against Bryant's claim of prejudice.

8. Lastly, Bryant contends that his trial counsel rendered ineffective assistance by "failing to preserve numerous claims for postconviction review"; he cites seven instances of such alleged deficiencies on the part of his attorney; however, six of the claims are not properly before this Court for review in this appeal because they were not raised as ineffective assistance claims in Bryant's motion for new trial, as amended.[4] "Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims not raised at that time are waived." *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003).

As for Bryant's claim that trial counsel was ineffective for failing to object, via a motion to suppress, to the introduction of evidence obtained as the result of a deficient search warrant, Bryant must show that his attorney's performance was deficient and that such deficiency so prejudiced him that there is a reasonable likelihood that, but for counsel's error, the outcome of his trial would have been different; he also must overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80

---

[4] The procedurally defaulted claims are that trial counsel was ineffective for failing to object to the introduction of a toolbox taken from Bryant's home, which toolbox had stickers on it depicting a pentagram and "NATAS," ostensibly spelling "Satan" backwards; for failing to request a limiting jury instruction after the introduction of evidence of a prior difficulty between Bryant and Haynes; for failing to object to the introduction of allegedly improper expert testimony by the fire investigator; for failing to object to the introduction of Bryant's bank statements on the basis that the defense was not given the required notice; for failing to object to a violation of the rule of sequestration; and for failing to object to a substitute judge ruling on Bryant's motion for a directed verdict.

LE2d 674) (1984); *Sweet v. State*, 278 Ga. 320, 321-322 (602 SE2d 603) (2004). Moreover, in this Court's review of the trial court's determination of such a claim of counsel's ineffectiveness, this Court must uphold the trial court's factual findings unless they are clearly erroneous; the trial court's legal conclusions are reviewed de novo. *Sweet*, supra at 321-322; *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004). The trial court determined that Bryant failed to demonstrate that trial counsel was deficient for not moving to suppress the fruits of the search on the basis urged. That determination was not error.

Bryant's claim is premised on his contention that the affidavit submitted in support of the search warrant for his home contained patently false factual assertions in that it stated that Haynes's neighbor, Todd, identified Bryant leaving Haynes's home on the day of her death when, in fact, Todd merely stated that she saw a man leaving the mobile home and get into a truck that she had previously seen, and moreover, at trial Todd could not identify Bryant as that man.

But, there is no showing that such information in support of the warrant was patently false or that there was any intent to mislead the judge in seeking the search warrant. Todd testified at trial that she observed the man she often saw at the trailer leave in an agitated manner, and that Hall had "put the name with the person driving the truck." Todd's inability to identify Bryant at trial, which occurred almost two years after the crimes, does not demonstrate a purposeful misrepresentation in the affidavit. What is more, in determining whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, this Court is to examine the totality of the circumstances. *State v. Lejeune*, 276 Ga. 179, 181 (1) (576 SE2d 888) (2003). Other statements in the affidavit, including those by Hall, supported the inference that Bryant was in fact the person seen by Todd. In fact, the content of the affidavit, even excluding the information gleaned from Todd, was sufficient to support the issuance of the warrant. *State v. Hall*, 276 Ga. App. 769, 772 (624 SE2d 298) (2005). There was no deficiency by counsel for not seeking to suppress the evidence seized in the search of Bryant's home based upon the alleged insufficiency of the search warrant affidavit.

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 9, 2007 —
RECONSIDERATION DENIED NOVEMBER 5, 2007.

*Garrett & Gilliard, Kirk E. Gilliard*, for appellant.

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.