### S11A0659. ROGERS v. THE STATE.
(717 SE2d 629)

HINES, Justice.

Randy Rogers appeals his convictions for the felony murder of Gregory Drones, the aggravated assault of Barbara Drones, and burglary.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that at 10:30 p.m., Barbara ("Barbara") and Gregory Drones ("Drones") had just returned to their DeKalb County apartment with food from a restaurant. They were in the master bedroom in the back of the apartment, eating, when they heard the sound of breaking glass coming from the front of the apartment. Drones was on the telephone with his daughter; he told her to "hold on" and motioned Barbara toward the bathroom. She heard a shotgun blast and a man holding a handgun came through the bedroom door. Drones, who was unarmed, fought with the man, but collapsed when a shotgun blast fatally struck him in the neck; the man whom Drones had struggled with then "disappeared" from the bedroom. Barbara attempted to call 911, but a second man put a shotgun to her throat and demanded money and drugs. Barbara did not have any drugs; she took sixty dollars from her purse and attempted to give it to the assailant, but he did not take it and left the bedroom, and then the apartment.

---

[1] The crimes occurred on August 29, 2008. During the July 2009 term, a DeKalb County grand jury indicted Rogers for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of burglary, aggravated assault of Gregory Drones by shooting him with a shotgun, aggravated assault of Barbara Drones by brandishing a shotgun, aggravated assault of Gregory Drones by brandishing a handgun, aggravated assault of Barbara Drones by brandishing a handgun, two counts of burglary, possession of a firearm during the commission of the felony of burglary, and attempt to commit armed robbery. Rogers was tried before a jury September 21-25 & 28-29, 2009, and found not guilty of the charges of malice murder, aggravated assault of Gregory Drones by brandishing a handgun, aggravated assault of Barbara Drones by brandishing a handgun, possession of a firearm during the commission of the felony of burglary, and attempt to commit armed robbery; he was found guilty of all other charges. On September 29, 2009, the trial court sentenced Rogers to life in prison for felony murder while in the commission of aggravated assault, a consecutive term of 20 years in prison for aggravated assault of Barbara Drones by brandishing a shotgun, and a consecutive term of 20 years in prison for one of the burglary charges; the remaining crimes were either vacated by operation of law or merged with crimes for which sentences were imposed. *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Rogers moved for a new trial on October 27, 2009, and amended the motion on August 6, 2010; the motion as amended was denied on October 27, 2010. On November 24, 2010, Rogers filed a notice of appeal, his appeal was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

Shortly thereafter, in a parking lot near the victims' apartment, Rogers approached Janae Washington and asked her to give him a ride; he offered to pay her, had his hand under his shirt, and she agreed to give him a ride. During the drive, Rogers kept his hand under his shirt, and persuaded Washington to telephone Shanta Coleman, Rogers's cousin, and give her directions to enable her to come and meet him. Washington dropped Rogers off at a pizza restaurant and noticed blood in the car. Coleman picked him up in her car and drove him to another location.

Less than three hours after the crimes, Rogers sought medical attention for a shotgun wound to his wrist at Newton County Medical Center. As a result of Rogers presenting himself for treatment for such a wound, Captain Zara of the Social Circle Police Department went to the hospital and interviewed Rogers, who was at that time considered to be the victim of a crime. Rogers gave Zara a false name and claimed he had been shot while walking down the street, but investigators found no physical evidence corroborating his account, nor had police officers who were in the vicinity of where Rogers claimed he was shot heard any gunshots. DNA testing showed that blood found in the Droneses' apartment matched that of Rogers.

1. Rogers contends that the statements he made to Zara while at the hospital after the crimes were wrongly admitted as they were not voluntarily given because he was in pain and had suffered injuries that required him to be flown to another hospital for treatment.

> The fact that a defendant is in pain or taking pain medication does not, in and of itself, render any statement made involuntary. Nor does the circumstance of a defendant being hospitalized and undergoing treatment require such a finding.

*Sanders v. State*, 281 Ga. 36, 38 (2) (635 SE2d 772) (2006) (Citations omitted.).

During a *Jackson-Denno*[2] hearing, Zara testified that Rogers was lucid and awake, although at first disoriented, and although "[i]n a lot of pain . . . he was trying to tell where he was when he was shot." He did not appear to be under the influence of alcohol or drugs so as to prevent him from being able to speak freely and voluntarily, and, although there was the smell of alcohol in the room, he appeared to know what was going on and where he was. There was no medical testimony regarding what, if any, medication Rogers had taken, or of

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

any likely effects medication might have had upon him, or what effect pain from his injuries might have had on his ability to voluntarily participate in a discussion with Zara. The trial court's finding that the statements Rogers made to Zara were freely and voluntarily made was not clearly erroneous. *Sanders,* supra.

2. While Rogers was in jail awaiting trial, he placed a telephone call to his girlfriend, Green. Green made a further connection to a three-way call with an attorney's office, but the attorney was unavailable to speak with Rogers; after that conversation ended, Green created another three-way connection with a different attorney's office, with whom Rogers was able to speak. A recording capturing these conversations was introduced into evidence by the State. Content of the recording included Rogers's statements to the attorney that the evidence against him included his blood at the scene of the crimes, and that he did not know the Droneses.

Rogers contends that introducing this evidence violated his privilege not to have disclosed communications that he made with attorneys in anticipation of hiring them. See OCGA § 24-9-24. However,

> [t]he attorney-client privilege protects communications between the client and the attorney that are intended to be confidential; the protection does not extend to communications which are not of a confidential nature. [Cits.] . . . Nor does the privilege cover the mere fact of employment. [Cits.] Indeed, the statutes outlining the attorney-client privilege are not broadly construed; the attorney-client privilege embodied in OCGA § 24-9-24 has been confined "to its narrowest permissible limits." [Cit.] "Inasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation." [Cit.]

*Bryant v. State,* 282 Ga. 631, 636 (4) (651 SE2d 718) (2007). The trial court did not err in determining that the recording was admissible; there was no evidence that Rogers's conversation with the attorney could be considered to be confidential, or was intended to be so. Indeed, the evidence belied such an intent. The telephone call was only initiated as a three-way call, with Green's participation, and remained such throughout its duration; there was no evidence that Green ceased to listen to the conversations, and her comments after the connection with the attorney was closed indicated that she had heard the conversation. The privilege does not extend to those

situations in which third parties are present for attorney-client discussions. This Court's decision in *Taylor v. Taylor*, 179 Ga. 691, 694 (177 SE 582) (1934), recognized that there is a

> rule that communications between an attorney and client in the presence of third persons or of the adverse party are not within the prohibition [against testimony regarding the communication]. The rule is well recognized; and it has even been held that ignorance of the presence of the third person does not prevent the exception from operating. Thus it has been decided that an eavesdropper or a wiretapper is not incompetent to testify to the communications he over-hears. [Cit.]

See also *Cocroft v. Cocroft*, 158 Ga. 714, 719 (124 SE 346) (1924) (Discussing the marital privilege, and noting that if a couple is unsuccessful in keeping secret that which they intend to be confidential, the fact that they intended confidentiality will not prevent the testimony of one who hears the confidence.).

Rogers did not inform the jail custodians that he wished to converse with an attorney so that he could do so on a telephone without a recording device being used. See OCGA § 16-11-62 (2) (A). The only evidence before the court was that notification that the calls were recorded appeared in a handbook given to each inmate, there were signs placed on each telephone warning that calls were recorded, a message was played over the telephone before each call stating that calls could be recorded, and that such a message appears on the recording here. In such circumstances, Rogers had no reasonable expectation of privacy in the telephone calls he placed to Green, see *Preston v. State*, 282 Ga. 210, 213-214 (4) (647 SE2d 260) (2007), and it cannot be concluded that the communications at issue fall within the privilege Rogers asserts. *Bryant*, supra.

Rogers also contends that the recording was made in violation of OCGA § 16-11-62 (4), which pertains to illegal wiretapping and surveillance. However, this assertion is meritless. Under OCGA § 16-11-62 (4),

> [i]t shall be unlawful for: . . . [a]ny person intentionally and secretly to intercept by the use of any device, instrument, or apparatus the contents of a message sent by telephone, telegraph, letter, or by any other means of private communication . . . .

There was no evidence that the interception of the telephone call to Green, and subsequent further connections, was secretly done. On

the contrary, the only evidence was that the calls were intercepted and recorded only after providing specific notice that such might occur. Compare *Ransom v. Ransom*, 253 Ga. 656, 657-658 (1) (324 SE2d 437) (1985). Additionally, OCGA § 16-11-62 (2) (A) contains "an express exception [to prohibitions on surveillance found in OCGA §§ 16-11-62 through 16-11-67] for recording the activities of another incarcerated in a jail, correctional institution or other facility in which a person who is charged or has been convicted is being held." *Burgeson v. State*, 267 Ga. 102, 106 (3) (c) (475 SE2d 580) (1996).

3. Barbara gave a statement to an investigating officer, Detective Kitchens, who recorded the statement in his handwriting; Kitchens did not appear at trial. Rogers moved to read the statement into the record, in its entirety. The court agreed, and the State called to the court's attention that the State's motion in limine had been granted as to drug use by the victims in the past.[3] The court then clarified that statements about the victims' prior drug use would be redacted, but "[e]verything else can go in." After defense counsel and the prosecution conferred as to the exact portions of the statement to be read, Rogers also requested redaction of Barbara's statements that the prior tenants in her apartment had sold illegal drugs, and that the tenants across the hall sold illegal drugs, contending that those remarks were hearsay and "collateral matters." The court then determined that the "gist" of Rogers's desire to read the statement was Barbara's description of the assailants in the statement, and ruled that only those portions of the statement regarding those descriptions would be read. Rogers asserted that another portion of the statement in which Barbara said "the suspects" returned to the bedroom was contrary to her testimony that only one did, and that this portion should be admitted as a prior inconsistent statement; the court reiterated that the only portion of the statement that would be read was that pertaining to the descriptions of the assailants.

Barbara testified at trial. During cross-examination, she said that she did not recall if, when she told the investigating officer that the hair of the first assailant was sticking out of his baseball cap, she included the detail that the hair was braided; the detail was not in the recorded statement, and it was uncontroverted that at the time of the crimes, Rogers wore his hair in braids. When confronted with

---

[3] The statement included a question regarding whether the victims sold or used illegal drugs, and Barbara's reply that they both had used drugs in the past, but were now "clean for over two or three years." At the time it granted the motion in limine, the court recognized that if Barbara testified inconsistently on that matter, this portion of her statement could be relevant for impeachment.

the statement, she also testified that she did not recall telling the detective that both assailants came back into the bedroom when she attempted to call 911; her trial testimony was that after Drones was shot, the first assailant "disappeared" from the bedroom, and it was the second assailant who confronted her with the shotgun. Nonetheless, she testified that Kitchens's record of her statement did, in fact, contain the report that she told him both suspects came back into the bedroom. Accordingly, even though the statement was not read verbatim into the record, the jury was aware of the information Rogers wished to place before it by reading the statement, and we conclude that any error in failing to allow the entire statement to be read did not contribute to the verdict, and was therefore harmless. See *Holsey v. State*, 281 Ga. 177, 179 (2) (637 SE2d 32) (2006); *Duckworth v. State*, 268 Ga. 566, 569-570 (2) (492 SE2d 201) (1997); *Worthy v. State*, 253 Ga. 661, 665 (4) (324 SE2d 431) (1985); *Cash v. State*, 293 Ga. App. 702, 704 (2) (667 SE2d 691) (2008).

4. Finally, Rogers asserts that the evidence was insufficient to support his convictions, contending that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except that of his guilt. See OCGA § 24-4-6.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

Rogers contends that he was a victim of the same assailant who shot Drones and that his later actions of avoiding detection, leaving the area, and lying to the law enforcement officer investigating his wound were precipitated by fear rather than guilt. He urges that inconsistencies between Barbara's testimony and her prior statements,[4] the testimony of Drones's daughter that during the telephone call with her father, just before the shots, she heard Barbara say "don't do it, it wasn't him," renders the evidence such that it does not exclude this hypothesis. However, the evidence was sufficient to enable a rational trier of fact to reject this hypothesis as unreasonable and to find Rogers guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S.

---

[4] Rogers introduced the testimony of an apartment manager who related that Barbara told her that three attackers had entered the apartment.

307 (99 SC 2781, 61 LE2d 560) (1979); *Robbins*, supra.

*Judgments affirmed. All the Justices concur, except Hunstein, C. J., who concurs in Divisions 1, 3, and 4, and in the judgment.*

DECIDED NOVEMBER 7, 2011.

*Brown & Gill, Angela B. Dillon*, for appellant.

*Robert D. James, Jr., District Attorney, Daniel J. Quinn, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.