**FIRST DIVISION
BARNES, P. J.,
HODGES and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 20, 2023**

# In the Court of Appeals of Georgia

A23A0577. BURNS v. THE STATE.

LAND, Judge.

After a jury trial, Derek Burns was convicted of committing several crimes in connection with the assault of his girlfriend . Burns appeals from the trial court's denial of his motion for new trial, arguing that the State violated his Sixth Amendment rights when an investigator and an assistant district attorney listened to three recorded jailhouse phone calls between him and one of his earliest attorneys in the case , and that the trial court erred by finding that the attorney said he was Burns' counsel in only one of the three calls. Burns also argues that the trial court erred in admitting testimony from his former girlfriend . For the following reasons, we affirm.

As set forth in the prior unpublished opinion in this case, Burns was indicted for committing aggravated assault, false imprisonment, simple battery, family

violence battery, and family violence simple assault in connection with the 2015 strangulation of the victim. *Burns v. State*, __ Ga. App. __ (Case No. A22A0566, decided May 26, 2022). At trial, the State introduced substantial evidence in support of those charges, including testimony by the victim. Id. The State also called an investigator to testify regarding her investigation of the incident. During the investigator's direct examination, the State did not elicit any testimony concerning the phone calls. However, during cross-examination, Burns' counsel requested to ask the investigator a question outside the presence of the jury. The jury left the courtroom, and Burns' counsel asked the investigator whether she had reviewed jail calls between Burns and "his attorney." The investigator initially denied listening to recorded jail calls between Burns and one of his earlier attorneys, David Daugherty, but eventually testified she "did listen to some of the calls." Id. Based on this testimony, Burns moved for a mistrial. Id.

Before the trial court made its ruling on the motion for mistrial, an assistant district attorney reviewed the three phone calls and informed the trial court that they contained no discussion of strategy, that Daugherty told Burns the State would be able to listen to the calls but would not be able to use them in court, and that Burns stated they were "not really going to talk about anything sensitive here anyway."

Based on this revelation, Burns argued that the assistant district attorney violated his attorney-client privilege by listening to the calls. *Burns*, __ Ga. App. at __. The trial court denied the motion for mistrial after finding that Burns was unharmed by any alleged violation. Id. Burns was found guilty of all counts, and he filed a motion for new trial, which was denied by the trial court. Id. Despite its denial of the motion, the trial court found that the investigator's actions were a violation of OCGA § 24-5-501 (a) (2).[1] Id.

On appeal, we reversed the trial court's finding that the investigator had violated OCGA § 24-5-501 (a) (2) and remanded the case to the trial court for it to consider whether the investigator and assistant district attorney violated Burns' Sixth Amendment rights when they listened to the phone calls. *Burns*, __ Ga. App. at __ . We did not address Burns' second enumeration of error related to the admission of witness testimony. Id.

On remand, the trial court held a hearing at which Daugherty testified that he was unaware that he needed to register his phone number with the jail so that his calls

---

[1] OCGA § 24-5-501 (a) (2) provides that "[t]here are certain admissions and communications excluded from evidence on grounds of public policy, including, but not limited to . . . [c]ommunications between attorney and client[.]"

would not be recorded and that Burns did not ask him to do so. At the time Burns made the relevant phone calls to Daugherty, Daugherty was one of Burns' attorneys. Daugherty testified that Burns initiated each call and acknowledged that at the beginning of each one, an announcement informed the parties that the call was being recorded.

Daugherty testified that he "started every call by identifying myself as his attorney of record. Sometimes I would say my bar number, and I then requested anyone listening or recording to please stop." He also testified that he intended the calls to be privileged and thought his statement would be "sufficient enough to notify anybody listening" that "there's attorney-client privileged conversations happening." Daugherty testified that he and Burns discussed case preparation and strategy on several calls, but Daugherty could not specifically recall what was discussed on each call. Although Daugherty testified that he believed that Burns' calls to him were the only means of communicating with him, he conceded that he met with Burns in person at the jail "between four and six times" to discuss his case. . Thus, it is clear that speaking with his client on a recorded line was not his only option.

During the hearing, the investigator testified that, as part of her work on the case, she requested and obtained from the sheriff's department Burns' jail call recordings for dates between April 23, 2018 and June 21, 2018. She did not request Burns' phone calls with his attorney, and she had never before received a CD of jail calls that contained phone calls between a defendant and his attorney. The investigator testified that she listened to the entirety of the three calls at issue but did not listen to another complete call between Daugherty and Burns after speaking with her supervisor and the lead prosecutor in the case. The investigator's log of the jail phone calls, including the calls between Daugherty and Burns, was provided to Burns and his trial counsel with the CD of calls during pre-trial discovery.

The investigator testified that after Burns moved for a mistrial, she discussed the phone calls with one of the prosecutors on the case, assistant district attorney Lindsey Raynor. Raynor admitted that she listened to the calls after Burns moved for a mistrial in order to address Burns' claim that the calls contained confidential information.

After the hearing on remand, the trial court conducted an in camera review of the three jail calls at issue, dated April 27, 2018, May 1, 2018, and May 2, 2018. The trial court then entered an amended order denying Burns' motion for new trial, holding that

5

there was no protected attorney-client communication in the calls and that as a result, Burns' Sixth Amendment rights had not been violated. The trial court further held that since nothing in the calls was used at trial, Burns was not prejudiced by any alleged violation of his Sixth Amendment rights. Burns appeals from that order.

1. Burns argues that because the State knowingly listened to the jail phone calls without justification, his Sixth Amendment rights were "per se" violated and all charges against him should be dismissed, or alternatively, he should receive a new trial. We are not persuaded.

*(a) Sixth Amendment Violation.* The Supreme Court has held that, under some circumstances, a defendant's Sixth Amendment rights may be violated by the State's intrusion into the attorney-client relationship. *Weatherford v. Bursey*, 429 U. S. 545 (97 SCt 837, 51 LEd2d 30) (1977). As relevant here, the Supreme Court of Georgia has determined that "when the [S]tate becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed." (Emphasis omitted.) *Howard*, 279 Ga. at 170 (3) (a) (citing *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995)). In other words, a per se

6

Sixth Amendment violation occurs when: "(1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes 'privy to' the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest. Once these elements are established, prejudice is presumed." *Carter*, 429 F. Supp. 3d at 790. As can be seen by this case law, there is no Sixth Amendment violation where the communications at issue are not confidential.

Under Georgia law,"[i]t is well established that the attorney-client privilege protects communications between the client and the attorney that are intended to be confidential; *the protection does not extend to communications which are not of a confidential nature*." (Citation and punctuation omitted; emphasis supplied.) *Parrish v. State*, 362 Ga. App. 392, 400-401 (868 SE2d 270) (2022). More specifically, the privilege does not "extend to those situations in which third parties are present for attorney-client discussions." *Rogers v. State*, 290 Ga. 18, 20-21 (2) (717 SE2d 629) (2011). We review a trial court's decision as to the application of the attorney-client privilege for abuse of discretion. *Etowah Env't Grp., LLC v. Walsh*, 333 Ga. App. 464, 475 (774 SE2d 220) (2015). "Further, we also may review the documents at issue to

determine whether the trial court correctly applied the privilege." *Brown v. Howard*, 334 Ga. App. 182, 183 (778 SE2d 810) (2015).

Fatal to defendant's argument is the fact that "there is no reasonable expectation of privacy in a recorded telephone call made from a jail or prison." *Keller v. State*, 308 Ga. 492, 497 (2) (b) (842 SE2d 22) (2020). With no reasonable expectation of privacy, Burns cannot rightfully contend that his jailhouse calls were confidential or privileged. Burns has cited no binding precedent, and we have found none, supporting his assertion that Daugherty's announcement at the beginning of each call creates an exception to the rule announced in *Keller*. See *Rogers*, 290 Ga. at 21 (defendant "had no reasonable expectation of privacy in the telephone calls he placed to [his attorney]"). In addition, there is no evidence that Daugherty or Burns was led to believe that the warnings before each jail call did not apply to them. Moreover, Burns concedes that even after Daugherty announced himself as an attorney and requested that a call no longer be recorded, he told Burns that the State would still be able to hear the recordings. Our review of the calls shows that Burns acknowledged Daugherty's warning and stated that he would not talk about "anything sensitive" on the call, and

that on all three of the calls, Daugherty frequently told Burns that they would discuss his case in more detail in person.

This evidence directly contradicts the assertion that these calls were confidential or ever reasonably intended to be such. To the contrary, both attorney and client knew they were being recorded and knew the State would be able to listen. Based on this evidence, the trial court did not abuse its discretion in finding that the three calls at issue were not privileged and that Burns failed to show a violation of his Sixth Amendment right to counsel.[2] See *Howard*, 279 Ga. at 170 (3) (a).

*(b) Remedy.* While it is clear to us that no Sixth Amendment violation occurred, we also hold that even if there was such a violation arising from the facts discussed above, neither dismissal of the indictment nor the grant of a new trial would have been justified under the circumstances of this case. The Supreme Court has rejected the idea that a Sixth Amendment violation requires dismissal of the indictment in every instance, instead holding that "[c]ases involving Sixth Amendment deprivations are

---

[2] Burns also argues that the trial court erred by finding Daugherty only said he was Burns' attorney in one of the three calls. Based on our holding in Division 1, any error in this factual finding is harmless. See *C.P. v. State*, 167 Ga. App. 374, 377 (4) (306 SE2d 688) (1983) (concluding that the juvenile court's incorrect factual findings amounted to harmless error since the record evidence otherwise supported the court's decision).

subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Morrison*, 449 U. S. at 364. "Dismissal [of an indictment] is only favored in the most egregious cases." (Citation and punctuation omitted.) *Robinson v. State*, 200 Ga. App. 515, 517 (1) (408 SE2d 820) (1991). In contrast to the sweeping relief requested here, "a properly tailored remedy will neutralize the taint of the constitutional violation without granting a windfall to the defendant or needlessly squandering the considerable resources the State properly invested in the criminal prosecution." (Citation and punctuation omitted.) *Scott v. State*, 364 Ga. App. 276, 278 (874 SE2d 459) (2022).

Here, there is no basis for the dismissal of the indictment or the grant of Burns' motion for new trial. None of the calls and nothing flowing from them was sought to be admitted as evidence by the State during trial. Instead, the calls only came up during Burns' cross-examination of the investigator, which took place outside the presence of the jury. Thus, the State never sought to use these calls in any fashion and did not do so. Accordingly, we conclude that even if there was a Sixth Amendment violation, Burns' proposed remedies are exceedingly overbroad and not properly tailored to any

alleged injury. Compare *Shillinger*, 70 F.3d at 1143 ("We believe that a new trial may well be the appropriate remedy in this case because of the *use of improperly obtained evidence to impeach [the defendant] at his trial*.") (emphasis supplied). While suppression of evidence could be an appropriate remedy where evidence has been wrongfully obtained in violation of a defendant's Sixth Amendment rights, the record shows that these calls were never admitted at trial and that the State did not attempt to use them in any way. Compare *Morrison*, 449 U. S. at 364 (where "the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted"). Based on the above, it is apparent that the remedy sought by the defendant is not justified by the evidence and that the trial court's order should be affirmed.

2. Burns argues that the trial court abused its discretion by admitting testimony from Burns' former girlfriend that Burns had choked her until she passed out. Specifically, Burns argues that the trial court erred in allowing the girlfriend's testimony to be admitted to show motive, intent, and to rebut Burns' affirmative

defense of justification. We conclude, however, that the girlfriend's testimony was properly admitted to show motive and that Burns has shown no error.

Under OCGA § 24-4-404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith," but such other-acts evidence is admissible for other purposes, including to prove motive, intent, plan, and identity. "The party offering evidence under Rule 404 (b) must show three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) that there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act."[3] *Heard v. State*, 309 Ga. 76, 84 (3) (b) (844 SE2d 791) (2020). "We review the trial court's ruling admitting evidence under Rule 404 (b) for abuse of discretion." Id. at 85 (3) (b).

With regard to the first prong of the test, OCGA § 24-4-401 defines "relevant evidence" as evidence that "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

---

[3] Burns does not argue that the State failed to show that he committed the act about which his former girlfriend testified.

12

it would be without the evidence." "The test for relevance is generally a liberal one, and relevance is a binary concept – evidence is relevant or it is not[.]" (Citations and punctuation omitted.) *Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022).

To properly show motive, "the extrinsic evidence must be logically relevant and necessary to prove something other than the accused's propensity to commit the crime charged." *Heard*, 309 Ga. at 85 (3) (c). "As the Supreme Court of Georgia has explained, motive has been defined as the reason that nudges the will and prods the mind to indulge the criminal intent." (Citation and punctuation omitted.) *Chambers v. State*, 351 Ga. App. 771, 777 (2) (833 SE2d 155) (2019).

It is well established that testimony regarding prior acts of domestic violence committed by a defendant can be relevant to show motive to harm and control intimate partners. See *Smart v. State*, 299 Ga. 414, 418 (2) (a) (788 SE2d 442) (2016) ("While motive is not an element of any of the charged offenses here, . . . testimony [from a witness regarding appellants' acts of violence against his ex-wife] was relevant to help the jury understand why Appellant might have used violence against [the victim]. Though [the witness's] testimony referenced specific acts of domestic violence, her testimony also revealed the impetus behind that violence: control."); *Chambers*, 351

Ga. App. at 777 (2) (officer's testimony regarding defendant's prior family violence battery conviction was admissible to show motive because it "revealed that the impetus behind the violence was control, or more specifically, reasserting control after being challenged by his girlfriend.")

Here, Burns' former girlfriend testified that when she met him in 2013, Burns was initially "very sweet [and] charismatic," but as the relationship progressed, Burns started to insult and berate her. On multiple occasions, Burns "raised his hand" at her and threatened to hit her, and each time she told him that she would end the relationship if he ever hit her. In 2015, while they were living together, the girlfriend believed that Burns had cheated on her and confronted him. In response, Burns "got behind" her and "choked [her] into unconsciousness." When she regained consciousness, she asked Burns what had happened, and Burns admitted that he had choked her to "calm her down."[4] Burns then left their home. The girlfriend called Burns' mother, told her what happened, and asked Burns' parents to come get Burns' things because "he didn't live

---

[4] Burns attempts to distinguish *Smart* from the facts of this case, arguing that because his former girlfriend testified to only one incident of domestic violence, her testimony fails to show that Burns exercised "control" over her. This argument is a nonstarter. See *Chambers*, 351 Ga. App. at 775-779 (2) (affirming admission of testimony regarding a single incident of battery against the defendant's former girlfriend).

14

with [her] anymore." Accordingly, the former girlfriend's testimony showed not only that Burns had committed prior acts of domestic violence, but also that Burns had used violence as a means to try to control his romantic partners. *Chambers*, 351 Ga. App. at 777 (2).

The relevance of the evidence, however, does not end our analysis, and we also consider whether the probative value of the other acts evidence is substantially outweighed by its unfair prejudice. See *Smart*, 299 Ga. at 418 (2) (b). "In weighing the probative value of other acts evidence, a court may consider a number of factors, including (1) prosecutorial need, (2) overall similarity of the other acts and the acts charged, and (3) the temporal remoteness of the other acts." *Lowe v. State*, 314 Ga. 788, 793 (2) (a) (879 SE2d 492) (2022). We must keep in mind that "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Smart*, 299 Ga. at 419 (2) (b).

"While the evidence against [Burns] was prejudicial — as almost all evidence presented by the State will be — on balance, we agree with the trial court that the probative nature of [his former girlfriend's] testimony outweighed that prejudice." *Smart*, 299 Ga. at 419 (2) (b). There is a three-year gap between the 2015 and 2018

acts, but "the significant similarity between those acts of domestic violence and the testimony concerning [Burns'] history of controlling and abusive behavior toward [the victim] shows that the [prior] acts are probative of his motive and not so remote as to be lacking in evidentiary value." *Lowe*, 314 Ga. 794 (2) (a). Further, "nothing in the testimony would shock the average juror or otherwise render the jury incapable of weighing the evidence in a disinterested manner, and given the relevance of the evidence to the question of motive, we cannot say that any prejudice it might have caused outweighed its significant probative value." (Citation and punctuation omitted.) *Smart*, 299 Ga. at 419. Accordingly, the trial court did not abuse its discretion in admitting the former girlfriend's testimony into evidence.[5]

*Judgment affirmed. Barnes, P. J., and Hodges, J., concur.*

---

[5] Because we conclude that the former girlfriend's testimony was admissible as to motive, we need not examine whether this evidence was also admissible on the issue of intent and to rebut Burns' justification defense. See *Mike v. State*, 358 Ga. App. 113, 117 (3) (a) n.3 (853 SE2d 887) (2021).