320 Ga. 320
FINAL COPY

S23G1192. BURNS v. THE STATE.

LaGrua, Justice.

"The Sixth Amendment to the United States Constitution guarantees that, '(i)n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *Adams v. State*, 317 Ga. 342, 350 (2) (893 SE2d 85) (2023) (quoting U. S. Const. Amend. VI). "It is well established that the right to counsel protected by the Sixth Amendment is the right to the effective assistance of counsel." Id. (citation and punctuation omitted). And "[t]he Sixth Amendment right to effective assistance of counsel includes the ability to speak candidly and confidentially with counsel free from unreasonable government interference." *United States v. Carter*, 429 FSupp.3d 788, 881 (VI) (A) (1) (D. Kan. 2019).

In this case, Petitioner Derek Burns, who was convicted of aggravated assault and other crimes following a jury trial in 2019,

argues that he is entitled to a new trial because the State intentionally listened to recorded jail calls between Burns and his attorney in violation of his Sixth Amendment rights. We granted certiorari to decide whether Burns's Sixth Amendment rights were violated by the State as he claims, and if so, what the remedy would be for such a violation. The trial court concluded that the jail calls between Burns and his attorney were not protected by the attorney-client privilege, and thus, there was no violation of Burns's Sixth Amendment right to counsel. The Court of Appeals affirmed the trial court's ruling, but for different reasons. See *Burns v. State*, 368 Ga. App. 642, 645-646 (1) (a) (889 SE2d 447) (2023). For the reasons that follow, we also conclude that the attorney-client privilege did not protect the jail calls at issue and that Burns's Sixth Amendment rights were not violated, and we therefore affirm the judgment of the Court of Appeals, albeit on different grounds. See id. at 646 (1) (a).

1. On April 23, 2018, Burns was arrested on aggravated assault and other charges in connection with the attempted strangulation of his girlfriend. Following his arrest, Burns was detained in the Cobb County Adult Detention Center, and during his detention, he made three outgoing phone calls on the jail's recorded phone line to Daniel Daugherty, a lawyer who represented Burns from April 30, 2018 to May 31, 2018,[1] for the limited purpose of seeking a bond for Burns. The recorded jail calls between Burns and Daugherty occurred on April 27, 2018, May 1, 2018, and May 2, 2018.

The recordings of the three jail calls reflect that, at the beginning of each phone call, a recorded message notified Daugherty that "this [was] a free call from [Burns], an inmate at the Cobb County Adult Detention Facility" and then informed the two men that the call was being recorded — specifically stating, "this call is from a corrections facility and is subject to monitoring and recording." As soon as the recorded message ended on the April 27

---

[1] Burns was also represented during this timeframe by Connie McManus, a public defender.

call, Daugherty requested that the jail "stop recording" and stated that the call was protected by the attorney-client privilege. At the beginning of the May 1 call, after the recorded message concluded, Burns said to Daugherty, "Hey, do you want to do the f**king recording thing." Daugherty then stated his name and bar number, identified himself as Burns's attorney, indicated that the call was protected by the attorney-client privilege, and said, "please turn off the recording now or stop listening." Right after making these statements, Daugherty advised Burns that "they" could still listen to the calls, but "they just don't use it in court." Burns said he knew that, but "either way," they were "not going to talk about anything sensitive" anyway. At the beginning of the May 2 call, after the recorded message ended, Daugherty stated his name, identified himself as Burns's attorney, indicated that the call was protected by the attorney-client privilege, and directed the jail to "stop recording or stop listening."

4

At various points during each of the jail calls, Daugherty told Burns that there were certain matters he wanted to discuss with Burns, but he wanted to wait until they met in person at the jail. In large part, the three phone conversations concerned bond and personal matters — including Daugherty telling Burns that he would pick up Burns's mail; Burns asking Daugherty to bring him newspapers and other reading materials; Daugherty describing his recent trip to the lake and what he did over the weekend; and a discussion about Burns's dog. With respect to bond, during the first call, Burns asked Daugherty when he could "get a bond," and Daugherty said that "step one" was to "get a hearing." During the second call, Burns told Daugherty that he "need[ed] a bond" and asked Daugherty when the bond hearing would occur, and Daugherty responded that the hearing would take place in "probably a couple weeks." During the third call, Daugherty told Burns that the bond hearing was scheduled for May 15 and that his "main goal" was to get Burns out of jail on bond.

The three jail calls were raised for the first time at Burns's trial in October 2019 during the testimony of Cobb County Police Department Detective Lisa Wells. After the State concluded its direct examination of Detective Wells, Burns cross-examined Detective Wells, initially focusing on whether Detective Wells had noted any inconsistencies between the victim's trial testimony and the victim's prior account of the events leading to Burns's arrest. Burns's trial counsel then paused her examination of Detective Wells and asked the trial court for permission to address the court "outside of the presence of the jury." After the jury was excused, defense counsel advised the trial court that Detective Wells needed to be questioned "on the record but outside the presence of the jury," without giving any details about the nature of that questioning. The trial court allowed defense counsel to proceed without the jury, and the following exchange occurred:

> DEFENSE COUNSEL: Did you review the jail calls between my client and his attorney?
> DETECTIVE WELLS: Yes.
> PROSECUTOR: Between Mr. Burns and his attorney?

DETECTIVE WELLS: Oh, no, no, no. If he came on the recording, I did not listen to any of those. I did not listen to those, because I know better than to listen to them.

DEFENSE COUNSEL: Okay, then why did you say in your supplemental report that all calls involving Daniel Daugherty were reviewed but not documented due to the attorney-client privilege?

DETECTIVE WELLS: Because at the time, I didn't — I don't know. Yeah, I stopped listening to them. That's the best answer I can give you, is that when I realized that he was the attorney, I had to shut it down.

DEFENSE COUNSEL: Isn't it true that at the beginning of every phone call with my client and his attorney, he states his name and his bar number?

DETECTIVE WELLS: I don't think he stated his bar number.

DEFENSE COUNSEL: He stated he was his attorney. You knew he was his attorney, you put it in the supplemental report.

DETECTIVE WELLS: Yeah, I did. I reviewed some of the calls. I reviewed some of the calls and did not document. I believe I made a phone call to ask the District Attorney's Office if I could review the calls, and I was told no, to document. So yes, I did listen to some of the calls.

Following this testimony, Burns moved for a mistrial, arguing that he had been prejudiced by Detective Wells's review of "confidential information, telephone calls" between Burns and his attorney. The trial court advised that it would need to hear testimony from Daugherty to rule on the motion, and defense

7

counsel indicated she could make Daugherty available to testify the next day. The trial court reserved its consideration of the motion until the following morning.

The next day, Burns again presented his motion for a mistrial,[2] arguing that, although Burns was ultimately represented by different counsel prior to and at trial, Daugherty represented Burns for a brief period following his arrest.[3] Burns contended that, because Detective Wells testified that she listened to recordings of jail calls between Burns and Daugherty, the "attorney-client privilege [was] violated for security purposes," and it was "grounds for a mistrial."

In response, the State argued that Daugherty strictly represented Burns in the "limited capacity" of "a bail hearing only," and not in any other aspect of the case. One of the prosecuting

---

[2] The record reflects that Daugherty did not ultimately testify at the motion-for-mistrial hearing.

[3] The trial court acknowledged that it had received a copy of Daugherty's entry of appearance, which was entered on April 30, 2018, and withdrawn on May 31, 2018.

attorneys, Assistant District Attorney ("ADA") Lindsey Raynor, then informed the trial court that, the prior evening, she reviewed the "three jail calls that [we]re listed in Detective Wells' report," and she stated the following with respect to those calls:

> Mr. Daugherty, the purported lawyer, says [on one of the calls]: "You know that they still get to listen to these calls, they just don't get to use it in court." And the defendant says: "Yeah, I know, either way, but we're not really going to talk about anything sensitive here anyway." So he's aware at least. Either he's pretending or some kind of way invoking some kind of attorney-client privilege or whatever the situation. But he knows: "We're not going to talk about anything sensitive, and we know they're still going to listen anyway, so just don't talk about anything sensitive. . . ." [T]hey are [also] talking about influencing, persuading, or coercing the victim in this case to change her statement or to give a statement that this never happened or that she overexaggerated or whatever. They have conversations as such that they need to make her change her statement before anybody's willing to file a motion for bond.

The State further argued that there had been "no unfair advantage" or "harm to the defendant in this situation" because the State was about to conclude its case-in-chief, and none of the jail calls had been played for the jury or even referenced at trial. The

9

State reiterated that, "once [Detective Wells] learned" that Burns was speaking to his lawyer on the calls, she notified her supervisor and the other prosecuting attorney in the case that Burns's calls with his lawyer were being recorded. The State argued that Detective Wells was advised by the prosecuting attorney not to listen to any more of the calls, and so Detective Wells stopped listening to "the substance of those calls." ADA Raynor then emphasized that she did not listen to the substance of the calls either.

Following the State's argument, Burns argued that "the problem [was] even worse now, because now the State and the prosecution ha[d] actually listened to the calls" and relayed "what the substance of the calls was," and thus, "everybody ha[d] violated [his] attorney-client privilege." Burns also noted that Detective Wells did not discontinue listening to the calls "once she realized who it was," as alleged by the State. Burns advised that, at the beginning of every one of the phone calls he made to Daugherty,

10

Daugherty stated his name and his bar number and said to "[p]lease discontinue recording."

The trial court informed the parties that it had reviewed the entire case file and observed that Daugherty entered "a limited appearance, only for the purpose of bail . . . for a bail hearing." The trial court also noted that, while Detective Wells listened to the calls between Burns and Daugherty, she stopped listening when she realized who was speaking. The trial court ruled that there was "no harm to the defendant at this point," and that it was "certainly not going to grant a mistrial."

At trial, the jury found Burns guilty of aggravated assault, false imprisonment, family violence battery, and family violence assault. Following Burns's convictions, he filed a motion for new trial, contending, among other things, that his attorney-client-privilege rights were violated when Detective Wells and ADA Raynor listened to the jail calls between Burns and Daugherty. Burns further argued that the State's intentional intrusion into his

attorney-client relationship constituted a direct interference with and per se violation of his Sixth Amendment rights.

The trial court denied Burns's motion for new trial. On appeal, the Court of Appeals vacated the trial court's ruling because the trial court had not "explicitly engaged in any analysis of the Sixth Amendment" and remanded the case for the trial court to consider whether Detective Wells's and ADA Raynor's acts of listening to the recorded jail calls violated Burns's Sixth Amendment rights by intruding upon his attorney-client communications. *Burns v. State*, 364 Ga. App. XXV (Case No. A22A0566) (May 26, 2022) (unpublished).

On remand, the trial court held an evidentiary hearing on Burns's motion for new trial and heard testimony from Daugherty about his representation of Burns and the nature and purpose of the three jail calls, and from Detective Wells and ADA Raynor about the circumstances surrounding their review of the jail calls. Following the motion-for-new-trial hearing, the trial court conducted an in

camera review of the three jail calls between Burns and Daugherty and subsequently issued an order denying Burns's motion for new trial.

In denying Burns's motion for new trial, the trial court addressed the three jail calls at issue, noting the following: (1) during the April 27 jail call, Daugherty "gave his Bar Number and asked that the recording of [the call] be terminated," but "[t]here was nothing in this call that, if overheard, would prejudice [Burns's] defense" and "[n]o privileged information was heard"; (2) during the May 1 jail call, Burns "reminded Daniel Daugherty" at the outset of the phone call "to give the information so that the call would not be recorded," but the second "call did not contain any trial or case information"; and (3) during the May 2 jail call, Daugherty "answered himself as the attorney of record" and told Burns when the bond hearing had been set; Burns was "concerned about another case, not this one, but Mr. Daugherty was clear that his representation was only to get [Burns] out of jail in this case"; and

13

"there was no privileged information heard or anything that would prejudice [Burns's] defense in this case." The trial court also determined that Burns's and Daugherty's "only communication about legal matters was the question of a bond hearing" — specifically, that Daugherty said "he would apply for one, had applied[,] and had a court date." The trial court further noted that, during the jail calls, "[n]o legal advice was given nor strategy for the case was set out," and "Daugherty said his only role in the case was to get [Burns] out of jail." For these reasons, the trial court concluded "there was no protected attorney-client communication in these calls" or "Sixth Amendment violation," and thus, Burns's motion for new trial should be denied.

Burns timely appealed the denial of his motion for new trial to the Court of Appeals. The Court of Appeals affirmed Burns's convictions, concluding that "'there is no reasonable expectation of privacy in a recorded telephone call made from a jail or prison,'" *Burns*, 368 Ga. App. at 645-646 (1) (a) (quoting *Keller v. State*, 308

14

Ga. 492, 497 (2) (b) (842 SE2d 22) (2020) (punctuation omitted)), and thus, Burns could not "rightfully contend" that his calls with Daugherty were "confidential or privileged." Id. at 646 (1) (a). The Court of Appeals further determined that, because the attorney-client privilege "'does not extend to those situations in which third parties are present for attorney-client discussions'" and because Burns and Daugherty "knew they were being recorded and knew the State would be able to listen," the calls were not "confidential or ever reasonably intended to be such." Id. at 645-646 (1) (a) (quoting *Rogers v. State*, 290 Ga. 18, 20-21 (2) (717 SE2d 629) (2011)). On this basis, the Court of Appeals held that "the trial court did not abuse its discretion in finding that the three calls at issue were not privileged and that Burns failed to show a violation of his Sixth Amendment right to counsel." Id. at 646 (1) (a).

Burns filed a petition for a writ of certiorari in this Court, which we granted to decide whether the State violated Burns's Sixth Amendment right to counsel when it listened to the jail calls at

15

issue. However, we need not reach that issue because, as explained below, the jail calls were not privileged in the first instance.

2. A threshold issue in assessing Burns's Sixth Amendment claim in this case is whether the communications at issue are privileged. See *Howard v. State*, 279 Ga. 166, 169-170 (3) (a) (611 SE2d 3) (2005) (holding that, if the communications at issue "are not afforded privileged status," it "negates any claim that their disclosure violated defendants' right to counsel under the Sixth Amendment"). That is a question of state law. See *State v. Ledbetter*, 318 Ga. 457, 461-462 (1) (c) (899 SE2d 222) (2024). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law" and "has long been recognized in Georgia." *St. Simons Waterfront v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 421 (1) (746 SE2d 98) (2013) (citation and punctuation omitted). "However, because recognition of the privilege operates to exclude evidence and thus impede the truth-seeking process, the privilege is narrowly construed." Id. at

422 (1). "The [attorney-client] privilege belongs to the client, not the attorney," and "as the proponent of the privilege," the client "has the burden to establish that the privilege exists." *Ledbetter*, 318 Ga. at 462 (1) (c) (citations and punctuation omitted). See also *Howard*, 279 Ga. at 170 (3) (a).

In this case, the trial court concluded that the jail calls were not protected by the attorney-client privilege because no "trial or case information" was discussed and "[n]o legal advice was given nor strategy for the case was set out" during these communications. We review a trial court's decision regarding the application of a privilege, including the attorney-client privilege, for an abuse of discretion. See *Wiles v. Wiles*, 264 Ga. 594, 598 (2) (448 SE2d 681) (1994) (holding that appellate courts review a trial court's decision about the application of the psychiatrist-patient privilege for an abuse of discretion). See also, e.g., *Adams v. State*, 260 Ga. 298, 300 (2) (392 SE2d 866) (1990) (holding that a trial court's decision concerning the marital privilege is reviewed for an abuse of

discretion); *Etowah Environmental Group v. Walsh*, 333 Ga. App. 464, 475 (3) (774 SE2d 220) (2015) (noting that appellate courts review a trial court's decision as to the application of the attorney-client privilege for abuse of discretion). Under the abuse-of-discretion standard, the trial court "is afforded substantial deference that allows for a range of permissible outcomes, as long as that discretionary decision is based on a correct understanding of the law and facts." *Premier Pediatric Providers v. Kennesaw Pediatrics*, 318 Ga. 350, 359 (3) (898 SE2d 481) (2024) (citation omitted). Accordingly, "those findings will generally not be disturbed as long as they are within the bounds of the law, based on correct, relevant facts, and within the range in which reasonable jurists could disagree." Id. at 358 (2) (citation and punctuation omitted).

Under this deferential standard of review, we conclude that the trial court did not abuse its discretion in concluding that the jail calls at issue were not protected by the attorney-client privilege. We have held that, for the attorney-client privilege to attach, "the

communication must have been made for the purpose of getting or giving legal advice." *St. Simons Waterfront*, 293 Ga. at 426 (1). And, "[i]n Georgia, the privilege is narrowly construed, because its application operates to exclude evidence and thus to impede the search for the truth." *Hill, Kertscher & Wharton, LLP v. Moody*, 308 Ga. 74, 79 (2) (839 SE2d 535) (2020). See also *Rogers*, 290 Ga. at 20 (2) (quoting *Bryant v. State*, 282 Ga. 631, 636 (4) (651 SE2d 718) (2007)) ("Indeed, the statutes outlining the attorney-client privilege are not broadly construed; the attorney-client privilege . . . has been confined to its narrowest permissible limits," and "[i]nasmuch as the exercise of the privilege results in the exclusion of evidence, a narrow construction of the privilege comports with the view that the ascertainment of as many facts as possible leads to the truth, the discovery of which is the object of all legal investigation." (punctuation omitted)). Accord *Davis v. State*, 285 Ga. 343, 347 (6)

19

(676 SE2d 215) (2009); *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 208 (1) (538 SE2d 441) (2000).[4]

Given this narrow construction and application of the attorney-client privilege, the trial court's findings and conclusions regarding the jail calls at issue are sufficiently supported by the record in this case. Based on these recordings, the trial court was within its discretion to conclude that, while Burns and Daugherty discussed trying to obtain a bond for Burns and when the bond hearing would occur, this exchange of information was not made for the purpose of Burns's "getting" or Daugherty's "giving" of "*legal* advice." *St. Simons Waterfront*, 293 Ga. at 426 (1) (emphasis supplied). These were — essentially — procedural, scheduling matters about which Daugherty's advice was neither sought nor rendered. And the rest of their conversations during the jail calls largely pertained to

---

[4] We note that, in *St. Simons Waterfront*, we also stated that the attorney-client privilege attaches where "the communications in question relate to the matters on which legal advice was sought." 293 Ga. at 423 (1). However, that statement was dicta, and we do not apply it here.

personal issues, requests, and favors, further revealing the generally informal nature of these communications.

Thus, the trial court did not abuse its discretion when it concluded that the attorney-client privilege did not attach to these communications. *St. Simons Waterfront*, 293 Ga. at 426 (1). And, absent privileged communications, there was no violation of Burns's Sixth Amendment right to counsel in this case. See *Howard*, 279 Ga. at 169-170 (3) (a) (holding that, where communications are not attorney-client privileged, their "disclosure" will not violate "defendants' right to counsel under the Sixth Amendment"). Accordingly, we affirm.[5]

*Judgment affirmed. All the Justices concur, except Bethel, J., who concurs in judgment only, and Warren and McMillian, JJ., who dissent.*

---

[5] Because we conclude that the trial court did not abuse its discretion in determining that the particular communications at issue here were not privileged, we express no opinion as to the Court of Appeals' conclusion that the communications here were not confidential.

21

LAGRUA, Justice, concurring.

I concur fully in the majority opinion. I write separately to address and rectify one of the Court of Appeals' legal conclusions in this case. See *Burns v. State*, 368 Ga. App. 642, 646 (1) (a) (889 SE2d 447) (2023).

The Court of Appeals concluded that "the three calls at issue were not privileged and that Burns failed to show a violation of his Sixth Amendment right to counsel" for two reasons. *Burns*, 368 Ga. App. at 646 (1) (a). First, the Court of Appeals determined that the jail calls were not protected by the attorney-client privilege because "'there is no reasonable expectation of privacy in a recorded call made from a jail or prison.'" Id. (quoting *Keller v. State*, 308 Ga. 492, 497 (2) (b) (842 SE2d 22) (2020)). Second, the Court of Appeals determined that the attorney-client privilege did not attach to these jail calls because the communications were not confidential. See id. (citing *Rogers v. State*, 290 Ga. 18, 21 (2) (717 SE2d 629) (2011)). I

am writing only to address the Court of Appeals' "no reasonable expectation of privacy" analysis.

Although the Court of Appeals did not explicitly cite the Fourth Amendment in reaching its conclusion that "there is no reasonable expectation of privacy in a recorded call made from a jail or prison," *Burns*, 368 Ga. App. at 646 (1) (a) (citation and punctuation omitted), the concept of reasonable expectation of privacy is commonly used in determining whether there has been a violation of the Fourth Amendment, which is not at issue here. However, I note that, in reaching this conclusion, the Court of Appeals was simply following our lead. See id. (citing *Rogers*, 290 Ga. at 21 (2)). In *Rogers*, this Court erroneously cited *Preston v. State*, 282 Ga. 210, 213-214 (4) (647 SE2d 260) (2007) — a Fourth Amendment case holding that the defendant "had no reasonable expectation of privacy in the calls he placed to his mother from jail" — to conclude that the defendant Rogers had no "reasonable expectation of

privacy" in the phone calls he placed to his attorney from the jail. *Rogers*, 290 Ga. at 21 (2).

The Fourth Amendment sets forth the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. And, in *Preston*, we held that, "[t]o invoke the privacy protection of the Fourth Amendment," a defendant "must establish a legitimate expectation of privacy," which does not exist in outbound, personal telephone calls from prisoners to non-attorneys. 282 Ga. at 213-214 (4). While our holding in *Preston* was correct, I disapprove of our application of Fourth Amendment principles in *Rogers* and any other cases where we inadvertently conflated the Fourth Amendment expectation of *privacy* — i.e., the expectation of being free from unreasonable searches and seizures — with the Sixth Amendment expectation of *confidentiality* — i.e., the expectation that attorney-client privileged communications are or will remain confidential.

24

MCMILLIAN, Justice, dissenting.

Because I have serious concerns about whether the Court has correctly determined that the communications between Derek Burns and his attorney Daniel Daugherty were not made for the purpose of obtaining legal advice, I respectfully dissent.

"The attorney-client privilege is 'the oldest of the privileges for confidential communications known to the common law.'" *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 421 (1) (746 SE2d 98) (2013) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (II) (101 SCt 677, 66 LE2d 584) (1981)).[6] "The privilege generally attaches when legal advice is sought from an attorney, and operates to protect from compelled disclosure any communications, made in confidence, relating to the

---

[6] I agree with the Court that the question of whether communications are protected by the attorney-client privilege is a question of state law. See *State v. Ledbetter*, 318 Ga. 457, 461-62 (1) (c) (899 SE2d 222) (2024). But we have often relied on *Upjohn*, a seminal federal case construing the attorney-client privilege under the common law. See *Upjohn*, 449 U.S. at 389 (II) (relying on Fed. R. Evid. 501 which provided at the time that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience").

matter on which the client seeks advice." Id. at 421-22.

> The purpose of the privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Id. at 422 (quoting *Upjohn*, 449 U.S. at 389 (punctuation omitted)).[7]

The following facts are undisputed. On April 23, 2018, Burns was arrested and detained at the Cobb County Adult Detention Center. Burns retained Daniel Daugherty for the purpose of seeking bond; Burns made three outgoing phone calls to Daugherty during his detention and those calls were recorded; and Detective Wells and later ADA Raynor listened to those recordings. The parties also do not dispute what the content of those communications were because

---

[7] I also have some serious concerns about how narrowly the Court has read *St. Simons* to only protect attorney-client communications for the purpose of obtaining legal advice but not information that is merely "related to" the legal representation. Clients retain counsel to provide legal advice; therefore, it is not clear to me how conveying information related to the legal representation is not for the purpose of obtaining legal advice. However, for the purpose of this dissent, I assume that the Court is correct in its description of the scope of the attorney-client privilege.

the recordings are in the record on appeal.

What is disputed is whether these communications were protected by the attorney-client privilege, with the Court determining that the trial court did not abuse its discretion in concluding that the jail calls at issue were not protected by the attorney-client privilege. However, a review of the trial court's order denying the motion for new trial shows that the trial court made a number of conflicting factual findings within the order and that some of the findings are belied by the recordings.

In the first call on April 27, 2018, the trial court found that Burns "called . . . Daugherty," that Daugherty "gave his Bar Number and asked that the recording of it be terminated," and that on the call, Daugherty "did agree to file a Motion for Bond." Also, as recounted by the Court, with respect to the bond, the recording shows that "Burns asked Daugherty when he could 'get a bond' and Daugherty said that 'step one' was to 'get a hearing.'" Yet, the trial court concluded "[n]o privileged information was heard."

In the second call on May 1, 2018, the trial court found that *Burns* "reminded Daniel Daugherty to give the information so that the call would not be recorded." Although the trial court found "[t]hat call did not contain any trial or case information," the Court recounts that the recording showed that "Burns told Daugherty that he 'need[ed] a bond' and asked Daugherty when the bond hearing would occur, and Daugherty responded that the hearing would take place in 'probably a couple weeks.'"

In the third call on May 2, 2018, the trial court found that "Daugherty answered himself as the attorney of record. He told the Defendant that the bond hearing was set for May 15, 2018. The Defendant was concerned about another case, not this one, but Mr. Daugherty was clear that his representation was only to get the Defendant out of jail in this case." Yet again, the trial court found that "there was no privileged information heard."

A few days later, on May 7, 2018, Daugherty filed a five-page motion to reduce or modify bond with great detail about Burns to

support the argument that Burns was not a flight risk, was not a threat or danger to any person or the community, was not likely to commit a felony pending trial, and would not intimidate witnesses or otherwise obstruct the administration of justice.[8]

It is difficult to see why Burns's *outgoing* calls to Daugherty and asking questions about when the bond hearing would be set so he could be released from custody would not be for the purpose of obtaining legal advice on how to get released on bond, at least from Burns's perspective. Although the Court characterizes these communications as "procedural, scheduling matters about which Daugherty's advice was neither sought nor rendered," the purpose of the legal representation was to get Burns out on bond, and Daugherty presumably used his knowledge as an attorney to inform Burns that "step one" was to get a bond hearing and to thereafter determine how to schedule one, which he then conveyed to Burns.

---

[8] Some of this detail included Burns's long-time residence in the Atlanta metro area, his employment and business, his work with a non-profit organization to help injured veterans, and his family ties. Presumably, Daugherty obtained this information from Burns.

That the communications also contained personal matters unrelated to the representation do not make the communications about obtaining a bond unprivileged.

For these reasons, I have serious doubts about the Court's conclusion that the trial court did not abuse its discretion in finding that there were no attorney-client communications made in the recorded calls. However, I do not see that a reversal is required at this juncture given the conflicting findings of the trial court, which make it difficult to determine whether the trial court abused its discretion. Instead, I would vacate the judgment of the Court of Appeals and direct that the case be remanded to the trial court to reconsider whether the communications were for the purpose of obtaining legal advice.[9] See *Tatum v. State*, 319 Ga. 187, 196 (2) (b) (903 SE2d 109) (2024) (vacating and remanding to determine whether State's decision to seek a search warrant was prompted by the unlawful search when the record was unclear on this point);

---

[9] Because this case may be resolved on this point, I do not see a need at this time to consider whether the communications were confidential.

*Parker v. State*, 255 Ga. 167, 168 (1) (336 SE3d 242) (1985) (vacating and remanding for clarification as to the admissibility of any statements or confessions made by the defendant because "the court's rulings are unclear").

I am authorized to state that Justice Warren joins in this dissent.

Decided October 15, 2024 — Reconsideration denied November 14, 2024.

Certiorari to the Court of Appeals of Georgia — 368 Ga. App. 642.

*Matthew K. Winchester*, for appellant.

*Flynn D. Broady, Jr., District Attorney, Linda J. Dunikoski, Assistant District Attorney*, for appellee.

*Ashleigh B. Merchant, Hunter J. Rodgers, James M. Bass, Jennifer L. Hyman*, amici curiae.